IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| U.S. BANK NATIONAL ASSOCIATION, Plaintiff, | CIVIL ACTION |
|---|---|
| v. | |
| B-R PENN REALTY OWNER, LP., Defendant. | NO. 21-0502 |

# MEMORANDUM OPINION

In this commercial foreclosure action, Plaintiff U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2012-K18 ("Lender") moves, pursuant to Federal Rule of Civil Procedure 66, for the appointment of a receiver to operate Defendant B-R Penn Realty Owner's ("Borrower") property. For the following reasons, the motion will be denied.

## I. BACKGROUND

The facts relevant to this motion are largely uncontroverted, although the parties starkly disagree over their legal import.[1] Lender seeks to foreclose on the commercial mortgage executed by Borrower to secure repayment of a loan in the principal amount of $46 million. A multifamily property on North Broad Street in Philadelphia, known as Lofts 640 (the Property), serves as collateral for the loan. Due to financial hardship caused by the COVID-19 pandemic, the parties entered into a Forbearance Agreement on April 17, 2020, pursuant to which the

---

[1] The facts here are drawn from the pleadings, attached exhibits, and affidavits accompanying the motion to appoint a receiver and response. *See, e.g., Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 401 (3d Cir. 1942) (looking to the facts alleged in the verified complaint and supporting affidavit in evaluating appointment of a receiver); 12 Charles Allan Wright, et al., Federal Practice & Procedure § 2983 (3d ed.) (in a motion to appoint a receiver, a district court has discretion over the "the form and quantum of evidence required on a motion requesting the appointment of a receiver. . . .").

required monthly payments of principal, interest, and reserves were all deferred for three months. In July 2020, Borrower asked to extend the forbearance for an additional three months and executed an Amended Forbearance Agreement. Lender executed the agreement sometime in July.[2] Thus, the parties agree that Borrower's payments for April through September 2020 were to be deferred, aggregated, and paid in equal installments over 24 months, beginning in October 2020.[3]

Nevertheless, on September 11, 2020, a sub-servicer of the loan, Berkadia, inquired whether Borrower was planning to make a payment that month. Borrower responded that the forbearance had been extended for an additional three months, to which Berkadia replied that it was "still waiting for approval on" the extension. On September 23, 2020, Berkadia informed Borrower that the extension had been denied. The next day, Berkadia demanded payment from Borrower of about $1.6 million. Berkadia further warned that the loan would be transferred to special servicing if Borrower did not make the payment. Rather than pay the amount, Borrower requested reconsideration of the purported denial of the forbearance extension. Borrower attests that it did not hear back. Lender concedes that Berkadia's demand for payment in September was in error, as Berkadia was evidently unaware that Lender had agreed to the forbearance extension in July.

The import of the premature demand for payment, and the legality of the actions taken by the parties thereafter, are at the center of the dispute in the underlying foreclosure action. Borrower did not resume payments at the end of the forbearance period in October 2020 and has

---

[2] Lender states that the Amendment became effective on July 17, 2020. Borrower states that Lender executed the agreement "sometime in July," but did not disclose this to Borrower at the time.

[3] Due to a drafting error that Lender acknowledges in its reply brief, the Complaint states that repayment was to begin in November 2020 rather than October 2020.

2

not made a loan payment since before the forbearance. According to Borrower it stopped payment because, in its view, Lender breached the Amended Forbearance Agreement through Berkadia's untimely payment demand in September, thus excusing further payment until such material breach was cured. Lender asserts to the contrary that the erroneous payment demand, with which Borrower refused to comply, did not affect Borrower's duty to resume payments following the end of the forbearance period in October 2020. Lender therefore contends that Borrower has defaulted on its loan. Accordingly, Lender issued a Notice of Default declaring the entire loan due and payable on November 24, 2020 and initiated this foreclosure action in February 2021.

In addition to the default, Lender claims that it was forced to advance funds in July 2020 to cover the Property's insurance premium, that Borrower has refused to grant access to the Property to Lender's appraiser, that Borrower has refused for three months to provide various requested financial information, and that Borrower has retained or diverted the rents from the Property without paying anything to Lender.

## II. DISCUSSION

Lender first argues for a receiver pursuant to the terms of the Mortgage Agreement, which provides that "[i]f Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver. . . ." But Lender jumps the gun given that the question of whether "an Event of Default has occurred and is continuing" is the central contested issue in this foreclosure action. Borrower contends that it is Lender who is the breaching party due to Berkadia's premature demand for payment during the forbearance period, in violation of the Amended Forbearance Agreement. Borrower

contends that this first occurring breach excuses its duty to make loan payments until such breach is cured.  Consequently, Borrower disputes that it has defaulted on the loan and has counterclaimed Lender for breach of contract.  Until such time as the issue of whether Borrower has defaulted is decided it is premature to determine whether a receiver is warranted.  *See Wells Fargo Bank, N.A. v. Premier Hotels Grp., LLC*, 2015 WL 404549, at *9 (M.D. Pa. Jan. 29, 2015) (denying motion to appoint a receiver at the summary judgment stage because there was a genuine issue of material fact over whether an event of default that would trigger the contractual right to a receiver had occurred).

Even in the absence of an agreement between the parties, appointing a receiver is an equitable remedy within the sound discretion of the district court.  *See Miller v. Fisco, Inc.*, 376 F. Supp. 468, 470 (E.D. Pa. 1974).  Under federal law, "there is no precise formula for determining when a receiver may be appointed."  *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009) (internal quotation marks and citation omitted)); *see also Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp.2d 604, 610 (D.N.J. 2012) ("In diversity suits, federal law governs the issue of whether a receiver should be appointed.").  However, the Third Circuit has counseled that the appointment of a receiver is an extraordinary remedy that is not to be invoked "if milder measures will give the plaintiff . . . adequate protection for his rights." *Maxwell*, 131 F.2d at 403.  *See also, e.g., Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 824 (3d Cir. 1959) (describing a court-appointed receiver as "an equitable remedy of rather drastic nature"); *Miller*, 376 F. Supp. at 470 ("[T[he courts should ever keep in mind that a receiver is, like an injunction, an extraordinary remedy" and therefore "should be sparingly exercised, and with great caution and circumspection.").  It is the party seeking appointment that bears the heavy burden of justifying the need for a receiver.  *See William J. Mansfield, Inc. v. Udren L.*

*Offs., P.C.*, 2019 WL 1442618, at *2 (E.D. Pa. Mar. 22, 2019).

Lender has not, at this early stage in the litigation, demonstrated entitlement to such a drastic remedy. Lender's concerns regarding the danger of waste, injury, loss, and/or mismanagement of the Property are unfounded. While Lender expressed concern that Borrower would not pay the real estate taxes because of a shortfall in the tax escrow account, according to Borrower the taxes are paid and current. Further, it is undisputed that Borrower has now reimbursed Lender for an advance made to cover the Property's insurance. On this record, there is simply no indication that the Property is being neglected or dissipated by Borrower. Specifically, borrower attests that while he is in the process of renovating the Property it is also partially occupied by renters and generating income. *Cf. U.S. Bank Nat'l Ass'n v. Elder PA. I Del. Bus. Tr.*, 2018 WL 4863596, at *3 (W.D. Pa. Oct. 8, 2018) (appointing receiver, in part, because the property is abandoned, not generating income, and in need of remediation). Furthermore, Lender's conclusory reference to Borrower's diversion or retention of rents is insufficient to demonstrate fraudulent conduct. *See Mansfield*, 2019 WL 1442618, at *1 (moving party's "concern that [non-moving party's] lack of transparency about its finances may portend future fraudulent conduct" is too conclusory to support the appointment of a receiver).

None of Lender's remaining arguments shift the balance in favor of appointing a receiver. Lender's allegations that it "appears that Borrower is of dubious financial standing" and that "Borrower's actions suggest that valuation may be an issue" are vague and unsubstantiated. *See Premier Hotels Grp.,* 2015 WL 404549, at *9 n.4 (declining to appoint a receiver based on moving party's contention that defaulting party was "apparently insolvent" where claim was not substantiated). Moreover, even if there was support for Lender's concerns, "something more than just the doubtful financial standing of the defendant and the inadequacy of the security" is

5

required where, as here, Lender seeks a receiver to "manage and operate the mortgaged property pending foreclosure. . . ." *CCC Atlantic*, 905 F. Supp.2d at 614 (internal quotation marks and citation omitted). In the absence of credible allegations of fraud or the imminent danger of waste, loss, or mismanagement, that something more is lacking here.

For the forgoing reasons, Plaintiff's motion will be denied. An appropriate order follows.

**April 29, 2021**                                **BY THE COURT:**

/s/Wendy Beetlestone, J.
_____
**WENDY BEETLESTONE, J.**