# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| U.S. BANK NATIONAL ASSOCIATION, Plaintiff, | CIVIL ACTION |
|---|---|
| v. | |
| B-R PENN REALTY OWNER, LP., Defendant. | NO. 21-0502 |

## MEMORANDUM OPINION

U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2012-K18 ("Lender" or "Plaintiff") filed this foreclosure action after B-R Penn Realty Owner ("Borrower" or "Defendant") failed to resume making monthly payments on its commercial mortgage after a six-month forbearance. Borrower contends that its payments were excused because Lender breached the parties' forbearance agreement when a premature demand for payment was made by a sub-servicer of the loan. Accordingly, Borrower filed counterclaims for breach of contract, promissory estoppel, and a declaratory judgment, which claims Lender now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion will be granted.

### I. BACKGROUND

In October 2011, Lender issued Borrower a commercial mortgage in the principal amount of $46 million. Borrower's multifamily property on North Broad Street in Philadelphia, known as Lofts 640, serves as collateral for the loan. Per the parties' loan agreement, Borrower was to make monthly payments of principal and accrued interest on the first day of each calendar month. The failure to make such monthly payments would constitute an Event of Default, in which case Lender was entitled to, *inter alia*, accelerate the loan and foreclose on the mortgage.

Due to financial hardship caused by the COVID-19 pandemic, the parties entered into a Forbearance Agreement on April 17, 2020, pursuant to which the required monthly payments of principal, interest, and reserves were all deferred for three months. The Forbearance Agreement further provided that "[i]f Borrower fails to stay current with the Forbearance Period Repayment installments and regularly scheduled monthly installment during the Repayment Period ('Forbearance Payment Default'), this Agreement will terminate automatically. . . ." In the event of such a Forbearance Payment Default, all deferred payment amounts would become immediately due and payable. Because the COVID-19 pandemic raged on as the forbearance came to a close, Borrower requested to extend the forbearance for an additional three months. On July 17, 2020, Borrower executed an Amended Forbearance Agreement to that effect. Lender executed the amendment sometime that month.[1] Thus, the parties agree that Borrower's payments for April through September 2020 were to be deferred, aggregated, and paid in equal installments over 24 months, beginning in October 2020.[2]

Nevertheless, on September 11, 2020, a sub-servicer of the loan, an employee of Berkadia Commercial Mortgage LLC, inquired of Borrower whether it was planning to make a payment that month. Borrower responded that the forbearance had been extended for an additional three months and therefore payment was not due until October 1, to which the Berkadia employee replied: "Sorry for the confusion. Looks like there was a 3-month extension which we are still waiting for approval on." On September 23, 2020, Berkadia (incorrectly) informed Borrower that the extension had been denied. Borrower was "in complete shock" at

---

[1] Borrower claims that Lender executed the agreement "sometime in July," but did not disclose to Borrower at that time that it had done so.

[2] The Complaint states that repayment was to begin in November 2020 rather than October 2020. Lender has since conceded that this was a drafting error and that repayment was to begin in October 2020.

this revelation. The next day, Berkadia demanded payment of about $1.6 million from Borrower, including immediate payment for the July, August, and September statements that were part of the Amended Forbearance Agreement. Berkadia further warned that the loan would be transferred to special servicing if Borrower did not make the payment.

Borrower believed that only about $400,000 was due, and not until October 1st so made no payment. Further, when the forbearance period ended on October 1, 2020, Borrower again made no payment to Lender and has not since paid any mortgage amounts. Having received no payments since before the forbearance, Lender issued a Notice of Default declaring the entire loan due and payable on November 24, 2020 and initiated this foreclosure action in February 2021. In response, Borrower filed its counterclaims which are premised on the sub-servicer's premature payment demand during the forbearance period.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a party may move to dismiss a claim for relief for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. (12)(b)(6). To survive a motion to dismiss, a pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, courts must "accept as true all of the allegations in the [Defendant's counterclaims] and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). However, the assumption of truth does not apply to legal conclusions, such as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). "While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations." *Id.* at 679.

## III. DISCUSSION

The legal import of the premature demand for payment and the actions taken by the parties thereafter is at the core of the matters at issue here. It is undisputed that Borrower did not resume its mortgage payments at the end of the forbearance period in October 2020 and has not made a mortgage payment since before the forbearance. According to Borrower, it was entitled to stop payment because Lender "breached the terms of the Forbearance Agreement and Amendment by repudiating the terms thereof, declaring a bogus default, improperly demanding payment in full and refusing to provide the forbearance promised." Yet, Borrower cites to no applicable law in support of its bald allegation that a single untimely payment demand, payment which Lender did not seek to collect and which Borrower declined to pay, excuses Borrower's repayment of a $46 million mortgage.[3]

Borrower has not plausibly alleged that Lender repudiated the Forbearance Agreement. Under Pennsylvania law,[4] an anticipatory breach or repudiation of a contract requires "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila.*, 489 A.2d 733, 736

---

[3] Borrower cites two cases for the general proposition that under Pennsylvania law a material breach of a contract excuses the performance of the non-breaching party. *See Pure Earth, Inc. v. Call*, 2012 WL 947027 (E.D. Pa. Mar. 21, 2012), *rev'd and remanded*, 531 F. App'x 256 (3d Cir. 2013); *Ott v. Buehler Lumber Co.*, 541 A.2d 1143 (Pa. Super. 1988). However, even if precedential—which they are not— neither case dealt with an untimely or erroneous demand for payment or anything of the sort. In *Pure Earth*, the district court concluded after a bench trial that a buyer's material breach of the warranty provision in the parties' stock purchase agreement precluded it from collecting contractual damages under the agreement. *Pure Earth*, 2012 WL 947027 at *50. In *Ott*, the Superior Court of Pennsylvania corrected the trial court's jury instructions to reflect that an employer need not show a deleterious effect on its business in order to terminate an employee who materially breached the express terms of his employment contract. *Ott*, 541 A.2d at 1146. Borrower draws no plausible connection between these facially inapposite cases and the facts here.

[4] Pennsylvania law applies according to the parties' loan agreement.

(Pa. 1985) (quoting *McClelland v. New Amsterdam Cas. Co.*, 185 A. 198, 200 (Pa. 1936)). "A statement by a party that he will not or cannot perform in accordance with agreement creates such a breach." *Jonnet Dev. Corp. v. Dietrich Indus., Inc.*, 463 A.2d 1026, 1031 (Pa. Super. 1983). The loan sub-servicer's single request for payment while the forbearance period was in effect which the Lender neither sought nor pursued, does not amount to an absolute and unequivocal refusal by Lender to adhere to the terms of the Forbearance Agreement. To the contrary, it is undisputed that Borrower made no payments during the six-month forbearance and thus received the benefit of the agreement. In short, Borrower's breach of contract claim premised on a mistaken payment request which the Borrower flatly rejected cannot survive this motion to dismiss.[5]

As for Borrower's claim for promissory estoppel, "in Pennsylvania, [a] promissory estoppel claim can only exist in the absence of a contract." *W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017). Borrower expressly avers that the parties entered a binding Forbearance Agreement, which agreement is attached to Lender's Complaint. Because there is no dispute regarding the existence or validity of the contract, Borrower's claim for promissory estoppel will be dismissed. *See, e.g., id.* ("As Plaintiff does not contest the validity of the [contracts] at issue, this Court must dismiss Plaintiff's claim for

---

[5] Because Borrower's declaratory judgment claim seeks a declaration to the same effect as its breach of contract claim, it will be dismissed for the same reason. Moreover, to the extent Borrower relies on a breach of the implied covenant of good faith and fair dealing as an alternative theory for its breach of contract claim, such an allegation is subsumed by the breach of contract claim and will therefore also be dismissed. *See, e.g., Burton v. Teleflex Inc.*, 707 F.3d 417, 432-33 (3d Cir. 2013) (affirming the grant of summary judgment on a claim for the breach of the covenant of good faith and fair dealing under Pennsylvania law because "[a]ny claim that [defendant] violated the duty of good faith and fair dealing in the performance of the Employment Agreement is . . . subsumed into [plaintiff's] breach of contract claim"); *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 474 (E.D. Pa. 2011) ("[W]e hold that, under Pennsylvania law, there is no separate cause of action for breach of the duty of good faith and fair dealing and that such a claim is subsumed within a breach of contract claim.").

promissory estoppel as a matter of law"); *ISObunkers, L.L.C. v. Easton Coach Co.*, 2010 WL 547518, at *4 (E.D. Pa. February 9, 2010) ("[A]n enforceable contract between two parties precludes relief for a claim of promissory estoppel.").

For the forgoing reasons, Plaintiff's motion will be granted and Defendant's counterclaims will be dismissed. An appropriate order follows.

**July 1, 2021**                                                     **BY THE COURT:**

                                                                              */s/ Wendy Beetlestone*
                                                                              **WENDY BEETLESTONE, J.**